BROWN v. HITRITZ.

(Circuit Court of Appeals, Second Circuit. December 11, 1911.)

No. 14.

MASTER AND SERVANT (§ 217*)—ASSUMPTION OF RISK—UNSAFETY OF PLACE OF WORK.

A paper mill employé assumed the risk of being injured through his foot slipping on a slimy floor, causing his hand to be caught between unguarded revolving rolls of a nearby machine, where he had worked at

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the place for a year, and was familiar with the surrounding conditions, and where it was his duty to keep the floor free from slime.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574-600; Dec. Dig. § 217.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the District of Connecticut.

Action by Albert Hitritz against Howard C. Brown. Judgment for plaintiff (180 Fed. 1019), and defendant brings error. Reversed.

This cause comes here upon appeal from a judgment in favor of defendant in error, who was plaintiff below. The action was for personal injuries sustained while in the employ of defendant as operative in a paper mill.

Seymour C. Loomis and W. A. Arnold, for plaintiff in error.

E. Henry Hyde, for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The paper pulp moved on a conveyor through a series of machines. From a roller in the upper part of the third press it passed to the upper part of the dryer machine, where it ran over a succession of rolls, one of which (steam heated) was located at the lower part of the machine on the side next to the third press. Between these two machines there was a space or alleyway about 2½ feet wide. As the pulp, or paper, passed over this alleyway at the upper level, a person could enter the alleyway, while the machinery was in motion, to attend to imperfections in the material, to oil parts, and to clean up the floor. The floor was composed of concrete laid on cobblestones, but for a long time this floor had been in bad repair. The cement had worn off or been broken in places, leaving the cobblestones protruding. This floor, from the nature of the operation of paper making, was always slippery, owing to the fact that the paste which entered into the composition of the paper, together with small pieces of the paper, were apt to accumulate upon the floor in that locality. As one entered this space or alleyway, there was to his right a revolving roll of the third press. It was unguarded; but, as its motion was such as would deliver paper, there was no risk of having the hand caught if it came in contact with the roll. To the left was a roll in the dryer machine, which was also unguarded. This roll, however, was drawing in paper, so that anything which came in contact with it would be drawn inwards. Plaintiff went into this space in the performance of his duties to clean up the floor. While cleaning it up he slipped, his left hand caught between the felt roll and the hot dryer, and he was drawn in, receiving severe injuries. The case was sent to the jury, which gave plaintiff a verdict.

The controlling question in the case is whether or not plaintiff assumed the risks of his employment in that particular place, with an

irregular and slippery floor and unguarded revolving rolls on either side. No statute of Connecticut, nor any decisions in that state, to which our attention has been called, have changed or modified the common-law rule as to assumption of risk. Although conditions have become dangerous through the negligence of the master, from failure to put up guards, and from allowing the floor to get into a state of disrepair, the servant will be understood to have assumed the risk of the employment, if he knew and appreciated, or ought to have known and appreciated, the danger resulting from the condition of matters in and about that alleyway.

The case seems to us a particularly clear one, uncomplicated by elements which sometimes make it doubtful what measure of knowledge and appreciation must be attributed to the servant. Existing conditions had continued for a very long time; the absence of guards, since the installation of the machines; the broken floor, for many months. The place was not dark. Its condition was always apparent, certainly by daylight. Plaintiff had been at work there for a year, going into this very place between the machines, as he says, "sometimes once a day, sometimes twice a week, sometimes 10 or 20 times a day." He had seen the revolving roll (to the left), knew it had no guard, and knew, if he got his hand caught there, it would be drawn in, as he says, "because the paper went through there." His further statement, that he "never thought of getting his hand caught there," is not important. He admits that he knew, if it was caught, he would be drawn in. So, too, as to the condition of the floor, every time he stepped in there he felt under his feet that it was broken and uneven. Every time he cleaned it, and it was his duty to clean it, he found it slippery with paste and moisture. His attention was drawn almost daily to the fact that he was walking over a floor upon which at any time he was likely to slip. These two defects—the unguarded roll and the broken slippery floor—were defects of a character to challenge the attention of any one, even of a much lower degree of intelligence than his testimony shows plaintiff to possess. He was 27 years of age and a good workman. The case is not like others, such as are referred to in the authorities cited, where some part of the machinery, perhaps a projecting set screw, or a too-loosely fitting driving belt, or a worn-out part, is likely to do damage, but such likelihood is apparent only to a man who has some knowledge as to how the machinery works. It requires no mechanical training to inform any one that on an irregular floor, slimy with wet paste, his foot may slip at any time; nor that, if he caught his hand on an inwardly revolving roll, it would be drawn inward. If there were any doubt about the latter proposition, it would be resolved by plaintiff's own testimony that he knew it would move inwards as the paper did.

We think the testimony clearly shows that plaintiff assumed the risk of the unguarded roll and uneven floor, and that defendant's request for direction of a verdict in his favor should have been granted.

Judgment reversed.